In re GRAND JURY PROCEEDINGS, (Billy J. WILLIAMS, GJ88–1), Petitioner–Appellee,

v.

UNITED STATES of America, Respondent–Appellant.

No. 89–8735.

United States Court of Appeals, Eleventh Circuit.

June 29, 1993.

Assistant U.S. Atty., Atlanta, GA, for respondent-appellant.

Andrew J. Ekonomou and Howell A. Hall, Atlanta, GA, for petitioner-appellee.

Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

The Government appeals the district court's order quashing a grand jury subpoena seeking a court reporter's notes of a deposition that the appellee gave as the plaintiff in an earlier civil suit. The district court had no valid reason for quashing the subpoena, and, accordingly, we reverse.

I.

Appellee Billy J. Williams brought a civil action in the United States District Court for the Northern District of Georgia against his former employer, North American Life Assurance Company (North American), to recover commissions that were allegedly due on policies he had sold. North American contended that it did not owe Williams any commissions because he had "rebated," a practice by which an agent gives part of his commission to an insured as an inducement to purchase the insurance. Both Georgia law and Williams' employment contract with North American prohibit rebating.

At the time Williams brought his civil suit, a Northern District of Georgia grand jury was investigating whether Williams had violated the mail and wire fraud statutes, 18

U.S.C. §§ 1341 and 1343 (1988), by his actions. Williams, fearing that his responses to North American's discovery requests in the civil suit might incriminate him and lead to a grand jury indictment, moved the district court pursuant to Fed.R.Civ.P. 26(c) for a protective order.[1] The court granted the order, limiting the use of the discovery Williams provided North American to the civil case.

Following initial discovery pursuant to this order, North American sought to take Williams' deposition. Williams, concerned whether the previous protective order would cover the deposition, refused to testify unless North American consented to the entry of another protective order. North American consented, and signed an order Williams had prepared. They presented the order to the judge, who later signed the order. The order stated in part:

> It is hereby ordered that portions of the deposition of the plaintiff designated by the plaintiff, including all transcripts and copies thereof shall be privileged.... No transcript or copies thereof nor any statements or testimony given therein shall be used or disseminated except in strict compliance with the following restrictions:
>
> ....
>
> (2) That the privileged deposition information shall be used solely and exclusively for the purpose of this civil action only and may not be used either directly or indirectly for any other purpose....

Williams gave his deposition, and soon after, Williams and North American settled the suit.[2]

Some time later, the federal grand jury issued a subpoena *duces tecum* for the court reporter's notes of Williams' deposition testimony. Williams moved the district court in this case to quash the subpoena, claiming that if the court reporter honored the subpoena she would disobey the protective order that had been entered in the civil suit and would abridge his Fifth Amendment right against self-incrimination. The district judge who had presided over Williams' earlier civil suit and had entered the protective order granted the motion to quash.

In his dispositive order, the district judge noted that the Eleventh Circuit had never been called upon to weigh the competing interests at stake—the grand jury's need for the subpoenaed deposition notes, on the one hand, and the district court's need for the protective orders to facilitate the resolution of the civil suit, on the other. He looked for guidance to the Second and Fourth Circuits.

In *Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d 291 (2d Cir. 1979), the Second Circuit first addressed these competing interests. There, the government sought to obtain depositions that witnesses had given in a civil suit pursuant to a Rule 26(c) protective order. To do so, the government attempted to modify the protective order.[3] The Court of Appeals concluded that

> absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need ..., a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and that such an order should not be vacated or modified

---

1. Rule 26(c) provides in part:
 Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

2. Williams gave his deposition after the parties presented the consent order to the court, but before the court signed it. That he testified prior to the entry of the order is of no moment.

3. In *Martindell*, a federal prosecutor informally requested the "protected" depositions first by telephone and then by letter. He did not, however, seek or obtain intervention in the case on behalf of the government. The district court denied the prosecutor's informal requests and enforced the protective order. *Martindell*, 594 F.2d at 293. The Second Circuit, apparently to satisfy the "case or controversy" jurisdictional requirement, treated the government as an intervenor even though it had not sought or been granted intervenor status.

merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation.

*Id.* at 296.[4]

The Fourth Circuit rejected the Second Circuit's *Martindell* test and the rationale underpinning it. In *In re Grand Jury Subpoena,* 836 F.2d 1468, 1477 (4th Cir.), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988), the Fourth Circuit adopted a *per se* rule that a protective order will not shield information from a grand jury subpoena. That court stated that "a reasonable balancing of the respective interests of the civil courts and grand jury investigations favors enforcement of a grand jury subpoena despite the existence of an otherwise valid protective order." *Id.* at 1477.

The district judge in the instant case rejected the Fourth Circuit's *per se* rule and stated that he would follow the Second Circuit's *Martindell* test. Focusing upon *Martindell's* basic assumption that "a witness should be entitled to rely upon the enforceability of a protective order against ... the Government," 594 F.2d at 296, the district court reasoned that because Williams relied on the Rule 26(c) protective order and waived his Fifth Amendment right to remain silent, he was entitled to have the order enforced. In effect, the court considered itself estopped to deny the enforcement of the protective order and, therefore, quashed the subpoena.[5] The Government appeals.

## II.

The sole issue before us is whether a protective order issued under Rule 26(c) of the Federal Rules of Civil Procedure may shield a deposition given in a civil suit from a subsequent federal grand jury subpoena. We reject the Second Circuit's *Martindell* approach of balancing the interests involved in favor of the Fourth Circuit's *per se* rule.

### A.

We first examine *Martindell's* primary assumption that a witness should be able to rely on the enforceability of a protective order against a grand jury subpoena. This inquiry necessarily weighs the grand jury's need for information against the district court's need for protective orders to facilitate litigation. We find that the essential and historic purpose served by the grand jury outweighs the utility served by Rule 26(c) protective orders.

In weighing these important interests, we begin by considering the historic role of the grand jury. To aid its constitutionally charged duties, a federal grand jury enjoys sweeping powers to investigate allegations of criminal behavior. *See United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974); *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972); *Blair v. United States,* 250 U.S. 273, 279–80, 39 S.Ct. 468, 470, 63 L.Ed. 979 (1919). Since the founding of the United States, grand juries have been

4. In *In re Grand Jury,* 945 F.2d 1221 (2d Cir. 1991), the Second Circuit applied the *Martindell* test in a civil litigant's appeal from a proceeding finding him in contempt for not complying with a grand jury subpoena. The court held that, in order to obtain deposition testimony given pursuant to a protective order, the government must "show improvidence in the original grant of the protective order or compelling need or extraordinary circumstances that would justify allowing the government access to the depositions." *Id.* at 1226; *see also Minpeco S.A. v. ContiCommodity Servs., Inc.,* 832 F.2d 739, 743 (2d Cir.1987) (requiring the Commodity Futures Trading Commission to show compelling need under *Martindell* in order to modify protective orders entered in a pending civil suit); *Palmieri v. New York,* 779 F.2d 861, 866 (2d Cir.1985) (directing the district court to apply the *Martindell* test to a state attorney general's request to intervene in a

private antitrust proceeding to modify a protective order). *But see United States v. Davis,* 702 F.2d 418, 422–23 (2d Cir.), *cert. denied,* 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983) (refusing to quash a grand jury subpoena seeking depositions in a civil case given with an understanding of confidentiality); *United States v. GAF Corp.,* 596 F.2d 10, 16 (2d Cir.1979) (not allowing the Department of Justice to use a civil investigative demand to reach discovery materials in private litigation under protective order).

5. The judge, however, did not undertake the analysis dictated by *Martindell.* He neither determined whether he had improvidently entered the protective order nor whether some extraordinary circumstance or a compelling need existed that would justify the grand jury's access to Williams' deposition.

accorded wide latitude to gather all relevant material because "the public ... has a right to every man's evidence." *Branzburg,* 408 U.S. at 686–87, 92 S.Ct. at 2660.[6] At the federal level, as in the states, the grand jury exercises this right for the public.[7]

The grand jury, in acting for the public, requires wide latitude to investigate allegations of criminal activity so that it can issue accurate indictments and dismiss baseless charges. *See United States v. Mandujano,* 425 U.S. 564, 573, 96 S.Ct. 1768, 1775, 48 L.Ed.2d 212 (1976); *Calandra,* 414 U.S. at 343, 94 S.Ct. at 617; *Branzburg,* 408 U.S. at 687, 92 S.Ct. at 2659. As the Supreme Court has observed, "[a] grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" *Calandra,* 414 U.S. at 344, 94 S.Ct. at 618 (internal quotations omitted).

 As the public has a right to everyone's evidence, the citizen has a concomitant duty to appear and to testify before a grand jury when subpoenaed to do so; it is "a basic obligation that every citizen owes his Government." *Calandra,* 414 U.S. at 345, 94 S.Ct. at 618; *see also United States v. Dionisio,* 410 U.S. 1, 9–10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973); *New York v. O'Neill,* 359 U.S. 1, 11, 79 S.Ct. 564, 571, 3 L.Ed.2d 585 (1959). The courts, in turn, have a duty to compel those who are subpoenaed to discharge this obligation; otherwise, the grand jury would be prevented from functioning effectively.

The court, however, has only this limited role in dealing with the grand jury. A district court simply does not intervene in the normal operations of a grand jury investigation. *In re Grand Jury Subpoena,* 836 F.2d

at 1471. "[T]he grand jury is not subject to the direction of the [district] court with respect to [its investigative] functions." *Id.* Likewise, the Supreme Court in *United States v. Williams,* —— U.S. ——, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), stated:

> The whole theory of [the grand jury's] function is that it belongs to no branch of the institutional government, serving as a kind of buffer or referee between the Government and the people. Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the judicial branch has traditionally been ... at arm's length.

*Id.* at ——, 112 S.Ct. at 1742; *see also Calandra,* 414 U.S. at 343, 94 S.Ct. at 617 (noting that no judge monitors the grand jury proceedings).

Against the grand jury's important need for information, and its independence from the judiciary, we consider the district court's interest in using protective orders to help dispose of cases. The Second Circuit recognized a "vital function" to be served by a Rule 26(c) protective order, "which is to 'secure the just, speedy, and inexpensive determination' of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant." *Martindell,* 594 F.2d at 295 (quoting Fed.R.Civ.P. 1). According to the court,

> [t]his objective represents the cornerstone of our administration of civil justice. Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed

---

**6.** The grand jury has been functioning as an institution for receiving evidence of criminal activity since the Magna Carta. That document guaranteed the accused the right to have a grand jury review the evidence against him prior to being charged for a criminal offense. This right, fully developed by the Seventeenth Century, was incorporated into our Constitution. The grand jury occupies a "'high place ... as an instrument of justice'" in our criminal justice system. *Branzburg,* 408 U.S. at 687, 92 S.Ct. at 2660 (quoting *Costello v. United States,* 350 U.S. 359,

362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956)); *see* Sara S. Beale & William C. Bryson, *Grand Jury Law and Practice* § 1:01 (1986); *see also Blair,* 250 U.S. at 279–80, 39 S.Ct. at 470.

**7.** In some states where criminal charges can be initiated by direct information filed by the prosecutor, as well as by indictment, the prosecutor may exercise the public's right to everyone's evidence.

over the years for disposition of civil differences.

*Id.*

■ While we recognize that protective orders help district courts resolve civil matters, we cannot agree with the Second Circuit that they are the "cornerstone of our administration of civil justice." Protective orders are merely a facilitating device and should not be used to shield relevant information from a valid grand jury subpoena. We find absolutely nothing in Rule 26(c) or its advisory committee notes to support the notion that Congress, in passing on and enacting the Rule, intended to circumscribe the grand jury's authority and subpoena power as the Second Circuit has done. Like the Fourth Circuit, we believe that the *Martindell* rationale fails to pay proper deference to the federal grand jury's constitutional status,[8] and to its independence from judicial management.

In our view, the desire to conclude a civil dispute quickly—whether to cut the parties' litigation expenses or to advance the court's civil docket—is not a compelling reason for interfering with the grand jury by refusing to enforce its subpoenas. The interest in fostering grand jury investigations outweighs the district court's interest in efficiently disposing of its civil cases. Permitting witnesses to rely on civil protective orders to keep information from a criminal investigation disrupts the essential grand jury process and threatens the grand jury's independence from the judiciary. We will not sacrifice the integrity of a grand jury investigation simply to speed the disposition of a civil docket.

## B.

■ The *Martindell* rationale also fails to recognize that federal courts lack the power to provide witnesses with the broad protection that witnesses seek. In asking a court to shield potentially incriminating material from a grand jury investigation, a civil witness seeks to avoid indictment and, ultimately, punishment based on the information revealed. Such a witness seeks, in essence, a form of use immunity.

Federal courts, however, have no authority to grant witnesses—including those who testify under a Rule 26(c) protective order—such use immunity. *Pillsbury v. Conboy*, 459 U.S. 248, 261–62, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983); *Grand Jury Subpoena*, 836 F.2d at 1475; *In re Corrugated Container Anti–Trust Litig.*, 620 F.2d 1086, 1094 (5th Cir.1980); *cf. Ullmann v. United States*, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956).[9] Congress has placed the power to grant use immunity exclusively in the Executive Branch. *United States v. D'Apice*, 664 F.2d 75, 77 (5th Cir. Unit B 1981); *see* 18 U.S.C. § 6003 (1988).[10] Our predecessor court, the Former Fifth Circuit, recognized this in *Corrugated Container*, 620 F.2d at 1094–95. There, the court held that the district court's action, in effectively granting use

8. The Fifth Amendment to the United States Constitution provides: "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." U.S. Const. amend. V.

9. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

10. 18 U.S.C. § 6003 (1988) provides:
 (a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States

attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.
 (b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, the Associate Attorney General, or any designated Assistant Attorney General or Deputy Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—
 (1) the testimony or other information from such individual may be necessary to the public interest; and
 (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

immunity to two witnesses, undermined the policies Congress codified in section 6003. *Id.* at 1094. Quoting from the Seventh Circuit's decision in *In re Daley*, 549 F.2d 469, 478–79 (7th Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977), the court stated:

> Although it is correct ... that federal courts possess inherent equitable powers over their own process in order to secure judicial proceedings from abuse, the immunity order which is issued pursuant to 18 U.S.C. § 6003 is not a matter of judicial process or judicial discretion. The immunity power originates in the legislature; its exercise is delegated solely to the executive.

*Corrugated Container*, 620 F.2d at 1097 (citations omitted).

While a district court can issue Rule 26(c) protective orders to encourage the full disclosure of relevant evidence, it cannot impinge upon the authority of the Executive Branch to decide who is to be accorded use immunity. In the case at hand, the district court lacked the authority to immunize Williams' deposition testimony, and, thus, should have denied the motion to quash the grand jury subpoena.[11]

**C.**

We also reject the *Martindell* test because it is administratively unworkable. The test itself defies construction. Moreover, in application, the *Martindell* approach places prosecutors in untenable positions and potentially places courts in conflict with each other.

**1.**

To begin, a court would be hard-pressed to interpret the Second Circuit's *Martindell* test. *Martindell* permits a witness to rely upon a court's protective order unless the government shows "improvidence in the grant" of the order, "some extraordinary circumstance," or a "compelling need." *Martindell*, 594 F.2d at 296. The Second Circuit, however, has yet to define these terms.

The Second Circuit nowhere outlines the definition of "improvidently granted," and it is difficult to imagine what that phrase could mean in this context. Nevertheless, to determine whether a protective order has "improvidently" issued, we assume that the reviewing judge looks only to the evidence before the court at the time the order was entered. Accordingly, the judge would not take into account the grand jury's need for the evidence, as that need would not have been apparent at the time the order issued.[12]

---

**11.** Williams argues on appeal that his deposition transcript should be protected because it would not have existed but for the protective order. We disagree. A Rule 26(c) order is simply a limited instrument. The district court, as noted, lacked the authority to grant the protection that Williams understood he enjoyed. Moreover, the protective order itself could not shield Williams from prosecution. It could not guarantee that the government would not prosecute him should the information become public at trial or available through any other means. *See Andover Data Servs. v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1083 (2d Cir.1989); *see also In re Grand Jury Subpoena*, 836 F.2d at 1476. Parties and intervenors may seek to have the protective order modified in order to gain access to the material. *See, e.g., In re Alexander Grant & Co. Litig.*, 820 F.2d 352 (11th Cir.1987); *Wilk v. American Medical Ass'n*, 635 F.2d 1295 (7th Cir.1981).

Civil plaintiffs fearing criminal prosecution may take precautions to protect against self-incrimination. Absent immunity, plaintiffs may invoke the Fifth Amendment in response to incriminating questions during discovery or trial. *Pillsbury*, 459 U.S. at 261, 103 S.Ct. at 616. Plaintiffs may voluntarily dismiss their suit without prejudice pursuant to Fed.R.Civ.P. 41(a)(1), until the threat of criminal prosecution has passed. In addition, a civil trial court may stay discovery until the grand jury investigation is completed. *See Wehling v. CBS*, 608 F.2d 1084, 1088–89 (5th Cir.1979). This procedure prevents civil litigants from engaging in strategic litigation to delay criminal investigations by blocking relevant evidence. *See In re Grand Jury Subpoena*, 836 F.2d at 1476. Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues. *See*, Note, *Using Equitable Powers to Coordinate Parallel Civil and Criminal Actions*, 98 Harv.L.Rev. 1023, 1039 (1985).

**12.** The government, except in rare cases, would not have disclosed the grand jury's need for the evidence at the time the court considered whether to enter the protective order, because in all probability (1) the government would not have been a party to the civil proceeding, and (2) unless it was monitoring the proceeding, it would not have known that an application for the order had been made.

Rather, the evidence then before the court would have been that presented by the party, or witness, seeking the protective order. It is unlikely, indeed, that such proof would have shown the need for the evidence the grand jury subsequently subpoenaed, a need that, had the court been aware of it, would probably have counseled against the issuance of the order. In short, it is not likely that the government could ever demonstrate "improvidence in the original grant of the protective order."[13]

What constitutes a "compelling need" or "extraordinary circumstances" may be easier to determine once the government informs the court about the grand jury's investigation. This may be of little comfort, however, to the party or witness seeking a Rule 26(c) order unless the grand jury's need for the testimony sought to be protected is known at that time.[14]

### 2.

The Second Circuit, moreover, never indicates how the prosecutor is to show "a compelling need" or "extraordinary circumstances." Certainly the prosecutor must avoid disclosing grand jury proceedings.[15] Yet, the prosecutor must show some such evidence in order to enforce the subpoena.

It is not clear whether the prosecutor has a single opportunity to be heard, and must therefore guess how much evidence to produce, or if the prosecutor may merely reveal the investigation a piece at a time until it convinces the court that the grand jury's need is sufficient. The *Martindell* line of cases never indicates whether the prosecutor makes the presentation to the court *in camera* to minimize the disclosure of the grand jury proceedings, or if the protected witness may participate in the process to ensure that the prosecutor does not overreach.

### 3.

Not only does the *Martindell* test put prosecutors in a strategic quandary, but it creates difficulties for judges as well. First, for the district judge issuing the protective order, the Second Circuit approach creates a Hobson's choice when, after the judge has induced the witness to incriminate himself by promising to enforce a protective order, the government demonstrates compelling need for the witness' testimony. The judge must choose between (1) going back on his word (thus breeding disrespect for the law in the eyes of the witness, if not the public in general) by honoring the grand jury subpoe-

---

**13.** If, on the other hand, the term "improvidently granted" does not have its usual meaning, but refers to an analysis that considers evidence adduced since the entering of the protective order, then the term loses independent meaning and collapses into the definition of "exceptional circumstances" or "compelling need." Those standards look not to what the judge issuing the protective order knew at the time the order was entered, but to the weight of the government's need for the information at the time it challenges the order. In any event, asking a judge to declare a protective order improvidently granted after the requester acted in reliance on the validity of the order and incriminated himself or herself may be a difficult and potentially unseemly exercise, especially if the court of appeals has approved the granting of protective orders.

**14.** A witness seeking a protective order under the *Martindell* test occupies a difficult position. Assuming that witnesses are more likely to seek protective orders when there is a greater risk of self-incrimination, a witness requesting such an order may be less than entirely forthcoming with the court. A witness cannot reveal the government's "compelling need" in his or her request. The witness must thus walk a difficult tightrope,

tailoring the request in such a way as to reveal only enough information to convince the court to issue the protective order so that the case may progress, but not enough to establish the grand jury's compelling need for the testimony.

Even if the court grants the protective order, the witness cannot know with certainty how long the protective order will remain in force. The witness knows that should the government later show a "compelling need," the court may vacate the order. The witness also knows that the government may get the information through a direct or indirect "leak" whether or not the protective order issues. About all a witness may rely on is the court's reluctance to vacate a protective order that it has issued and on which the witness has relied to his or her detriment.

**15.** Revealing the need for the protected information in order to enforce a subpoena defeats the important interest in maintaining secrecy of the grand jury proceedings. *See* Fed.R.Crim.P. 6(e)(2); *Blalock v. United States*, 844 F.2d 1546, 1556 (11th Cir.1988) (Tjoflat, J., specially concurring) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958)).

na, and (2) denying the public its "right to every man's evidence." Either way, the public suffers.

Second, the *Martindell* balancing-type inquiry creates the potential for conflict between the judge who is presiding over the civil case and the judge who is called upon to enforce the grand jury subpoena.[16] Posit a case in which a grand jury subpoenas a court reporter for notes of a deposition covered by a protective order. The reporter, aware of the protective order, notifies the judge who issued the order and seeks instructions. The judge, at the deponent's request,[17] orders the reporter not to produce the notes, and the reporter so advises the prosecutor. The prosecutor, in turn, repairs to another judge and seeks enforcement of the subpoena.[18] That judge, honoring the grand jury's subpoena, orders the court reporter to show cause why he should not be held in civil contempt for refusing to obey the subpoena. The reporter is then faced with the choice of suffering a contempt adjudication and possible incarceration either from the first judge (for disobeying the protective order), or from the second judge (for disobeying the subpoena). Thus, the two judges are placed squarely at odds with one another. If the two judges are colleagues on the same court, the conflict may be resolved informally without further litigation. If the two judges are from different courts, however, no simple solution might be available.

### III.

In sum, we find that the Second Circuit's test in *Martindell*, which balances the grand jury's need for the protected evidence against the district court's need to facilitate discovery, misunderstands the importance of the role of the grand jury. A district court, moreover, does not have the institutional au-

thority to craft protective orders with the effect of granting use immunity to civil witnesses. Finally, a balancing test proves to be administratively unworkable and may lead to unseemly inter-court conflict. We, therefore, hold that a Rule 26(c) protective order does not shield relevant information from a later grand jury investigation.

Accordingly, we vacate the order of the district court quashing the grand jury's subpoena. On receipt of our mandate, the district court shall enter an appropriate order enforcing the subpoena.

VACATED and REMANDED with instructions.

---

**16.** This conflict will be avoided only where, as here, the same judge presides over both proceedings: the judge's Hobson's choice, however, remains.

**17.** Note that the deponent could have challenged the subpoena by moving the court which would have jurisdiction to enforce the subpoena to quash it. The deponent may be better served, however, by seeking relief from the judge who entered the protective order, who, facing the

Hobson's choice, may decline to enforce the subpoena.

**18.** To avoid laundering the grand jury's investigation in the civil court and, if the matter is not handled *in camera*, in the presence of the deponent, and to protect grand jury secrecy, the prosecutor cannot petition the civil court for relief from the protective order but, instead, chooses to fight the grand jury's battle in a subpoena enforcement proceeding.