**In re the AUGUST, 1993 REGULAR GRAND JURY. (CLINIC SUBPOENA).**

Misc. No. 93–63.
Grand Jury Subpoena
Nos. KMS–41–02 & KMS–46–01.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 30, 1993.

Rebekah N. Murphy, N. Kent Smith, Hall Render Killian Heath & Lyman, P.C., Indianapolis, IN, for the Subpoenaed Clinic.

Kathleen M. Sweeney, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN, for the Government.

### Entry Denying Motion for Protective Order

TINDER, District Judge.

On August 26, 1993, a grand jury subpoena was served on the [Clinic][1] seeking various business and patient records spanning a period of time between January, 1989 and March, 1993. As indicated in the Government's brief, this subpoena was related to the grand jury's investigation of possible acts of wire fraud and mail fraud, as well as violations of Medicare and Medicaid statutes through the billing practices of certain medical clinics. Pursuant to the subpoena, the Clinic produced the requested documents. A second subpoena was issued on October 25, 1993 requesting documents related to an individual named [Dr. John Doe], who appears to be a caregiver at the [Clinic] rather than a patient; this information was also produced. Now, the Clinic asks the court to issue a protective order limiting the Government's use of certain portions of these records to grand jury proceedings only and to prohibit the use of the information in subsequent criminal or civil proceedings without prior notice to the Clinic and permission of the court. Only a narrow category of material is sought to be protected, namely "patient-identifying" information contained in the records; however, the Clinic asks that the protective

---

1. To preserve both the secrecy of the grand jury investigation and the privacy of those being investigated by the grand jury, all names, titles, or references in this entry which might in any manner identify those subject to investigation have been replaced with non-identifying, generic terms. Each substitution in the original text, made for the purposes of publication, is contained within brackets ( [ ] ).

order encompass all records already produced, all records requested but not yet produced, and all subsequently requested records.

Under Rule 17(c) of the Federal Rules of Criminal Procedure, a party may move to quash a subpoena and the court may, if the subpoena is unreasonable or oppressive, quash or modify the subpoena. Fed. R.Crim.P. 17(c). Whether one requests a protective order or asks the court to modify a subpoena, the effect is the same and Rule 17(c) must be satisfied in either instance. *See Branzburg v. Hayes,* 408 U.S. 665, 710, 92 S.Ct. 2646, 2671, 33 L.Ed.2d 626 (1972) (Powell, J., concurring) (remarking that party can challenge grand jury subpoena with motion to quash and for protective order); *In re Grand Jury Proceedings Under Seal,* 947 F.2d 1188, 1189 (4th Cir.1991) (construing motion for protective order as motion to quash). Thus, the inquiry is whether disclosure of patient-identifying information to the grand jury is unreasonable or oppressive under the circumstances. But, before beginning this analysis a word ought to be offered about the independent nature of the grand jury and the general reluctance to interfere or invade its province. As the Supreme Court recently stated:

> The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush.

*United States v. R. Enterprises, Inc.,* 498 U.S. 292, 297, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991). Moreover, the grand jury is, and should be, recognized as an entity existing independent of the judiciary:

> The whole theory of [the grand jury's] function is that it belongs to no branch of the institutional government, serving as a kind of buffer or referee between the Government and the people. Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the judiciary branch has traditionally been ... at arm's length.

*United States v. Williams,* —— U.S. ——, ——, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992). Thus, "[a] district court simply does not intervene in the normal operations of a grand jury investigation." *In re Grand Jury Proceedings,* 995 F.2d 1013, 1016 (11th Cir. 1993). Flowing from these notions is the presumption that, "absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority," and "the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *Id.* 498 U.S. at 728, 111 S.Ct. at 727. Only upon the strongest showing of need will this court venture into the realm occupied by the grand jury.

**I.** *Psychotherapist–Patient Privilege*

■ The Clinic first argues that a psychotherapist-patient privilege protects from disclosure the patient-identifying information contained in the records. Granted, Rule 501 of the Federal Rules of Evidence authorizes courts to construe and apply evidentiary privileges:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness [or] person ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

Fed.R.Evid. 501. In light of this rule, under appropriate circumstances this court stands ready to recognize a psychotherapist-patient privilege if warranted by the balancing test established in *Memorial Hosp. v. Shadur,* 664 F.2d 1058, 1061–62 (7th Cir.1981). However, even assuming (but not deciding) such a privilege is applicable to the present case, the psychotherapist-patient privilege cannot be the basis for the requested protective order because this privilege does not cover the material sought to be protected, namely information which merely identifies a patient. If the privilege applied, the court would rely on Proposed Federal Rule of Evidence 504 to give it content. This rule, although rejected by Congress, provides a thorough definition

of the privilege and is readily employed by most courts when the circumstances require application of the psychotherapist-patient privilege. *E.g., In re Grand Jury No. 91-1,* 795 F.Supp. 1057, 1059 (D.Colo.1992); *In re Grand Jury Subpoena,* 710 F.Supp. 999, 1005 (D.N.J.1989). Under Rule 504, only "confidential communications, made for the purposes of diagnosis or treatment" of a mental condition are privileged from disclosure. Proposed Fed.R.Evid. 504(b). Accordingly, the question is whether information which merely serves to identify a patient falls within this narrow category.

Underlying the psychotherapist-patient privilege is the notion that effective psychological therapy is accomplished by creating a confidential environment which encourages the patient to disclose information necessary for his treatment. *See* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 504[03] (1993); *Advisory Comm's Noted to Proposes Fed.R.Evid. 504,* 56 F.R.D. 183, 242 (1973). Protection from disclosure of the internal emotional thoughts and problems a patient would encourage the patient to be forthright with the therapist; less probable is the conclusion that protecting a patient's identity will serve similar therapeutic goals. Seemingly, identifying information is less worthy of protection than detailed psychological history or thoughts. Although never recognizing the existence of this privilege, the Seventh Circuit has commented on the type of information deserving of protection. In *In re Pebsworth,* 705 F.2d 261 (7th Cir. 1983), the court stated that they might have recognized the psychotherapist-patient privilege "if the information sought under the subpoena involved detailed psychological profiles of patients or substantive accounts of therapy sessions...." *In re Pebsworth,* 705 F.2d at 253. Additionally, other courts, in applying the privilege, have been much more explicit in refusing to protect information which only identifies the patient or merely provides information about the dates or length of treatment. *See, e.g., In re Zuniga,* 714 F.2d 632, 640 (6th Cir.), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983). Thus, the genre of information protected by the psychotherapist-patient privilege is narrow and does not include informa-tion used solely to identify patients. *See In re Doe,* 964 F.2d 1325, 1328 (2d Cir.1992) (limiting privilege to "psychiatric histories"); *In re Zuniga,* 714 F.2d at 640 (excluding from privilege information regarding identity of patients). True, disclosure of the identity of patients seeking psychological services may have a chilling effect on the willingness of persons to seek such help; however, this harm, although not insignificant, does not outweigh the need for full disclosure of all relevant information to the grand jury. *In re Zuniga,* 714 F.2d at 640 ("The essential element of the psychotherapist-patient privilege is its assurance to the patient that his innermost thoughts may be revealed without fear of disclosure. Mere disclosure of the patient's identify does not negate this element.") Considering the necessity and social value of full-disclosure, together with a belief that the psychotherapist-patient privilege is a limited exception to the general rule of full disclosure which must be narrowly construed, *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108–09, 41 L.Ed.2d 1039 (1974), this court refuses to extend the privilege to mere patient-identifying information. Thus, the Clinic may not rely on the privilege to sustain the request for a protective order.

## II. *General Right of Privacy*

 Clinic's second argument in support of its request for a protective order alleges that the Supreme Court has recognized a limited "right of privacy" which protects the confidentiality of a person's medical records. In support of this argument the Clinic refers the court to a sole civil case, *Pagano v. Oroville Hosp.,* 145 F.R.D. 683 (E.D.Cal. 1993). In *Pagano,* the court decided that under the California Constitution, not the United States Constitution, a patient enjoys a right of privacy which protects medical records from disclosure. *Pagano,* 145 F.R.D. at 697. While *Pagano* is thus clearly inapposite to the Clinic's argument, the court did discuss and compare a relevant decision of the United States Supreme Court, *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). In *Whalen,* a New York statute authorized the maintenance of computer records of the names and addresses of all person who obtained certain prescription drugs.

In addressing the contention that the statute violated a patient's right of privacy, the Court stated:

> The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.

*Whalen,* 429 U.S. at 598–600, 97 S.Ct. at 876. The privacy interests spoken of in *Whalen* have become known as the "confidentiality" and "autonomy" branches of the constitutional right of privacy. *Pesce v. J. Sterling Morton High Sch. Dist.,* 830 F.2d 789, 796 (7th Cir.1987). While *Whalen* did recognize a person's right of privacy—that is confidentiality—in his medical records, this right "does not protect against any and every compelled disclosure...." *Id.* at 797; *Whalen,* 429 U.S. at 599, 97 S.Ct. at 876. After recognizing the confidential nature of medical records, the *Whalen* court refused to hold that the disclosure of medical information to the state unconstitutional because:

> Unquestionably, some individuals' concern for their own privacy may lead them to avoid or to postpone needed medical attention. Nevertheless, disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient.

*Id.* at 602, 97 S.Ct. at 878. Thus, *Whalen* suggests, and later decisions agree, that even constitutionally protected confidential matters may be disclosed if the governmental interest in disclosure is great. *See Pesce,* 830 F.2d at 796–97 (deciding under both a balancing test and sliding scale approach); *Broucki v. Ryan,* 827 F.2d 836, 841 (1st Cir.1987) (adopting balancing approach); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir.1980) (balancing interests).

Assuming, as some courts have done, that a constitutional right of privacy attaches to the psychotherapist-patient relationship, *see, e.g., In re Zuniga,* 714 F.2d at 641; *Caesar v.* *Mountanos,* 542 F.2d 1064 (9th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977); *United States v. Layton,* 90 F.R.D. 520 (N.D.Cal.1981); *Hawaii Psychiatric Soc. v. Ariyoshi,* 481 F.Supp. 1028 (D.Hawaii 1979), the present issue is whether the protective order sought is necessary to prevent the disclosure of constitutionally protected patient-identifying information to persons other than the grand jury. *Whalen* specifically reserved decision on a very similar question, namely whether the right of privacy would be violated if, after collection of the information, the data was publicly disclosed, contrary to the New York statute which prohibited public dissemination of the information. *Whalen,* 429 U.S. at 605–606, 97 S.Ct. at 879–880. Noting that "[t]he right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures," *id.* at 605, 97 S.Ct. at 879, the Court stated:

> Recognizing that in some circumstances that duty arguably has its roots in the Constitution, nevertheless New York's statutory scheme ... evidence[s] a proper concern with, and protection of, the individual's interest in privacy. We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data—whether intentional or unintentional—or by a system that did not contain comparable security provisions.

*Id.* at 605–06, 97 S.Ct. at 879. Thus, the existence of statutory measures to ensure protection of the confidentiality of patient information obviates worries about disclosure of constitutionally protected matter, unless, of course, that material is disclosed in violation of the established protective measures. Once these facts were provided to the grand jury, any expectation of privacy held by the patients was lessened. Balancing a reduced privacy interest against a statutory scheme of protection for the confidential information, the disclosure of patient-identifying information in this case seems constitutionally appropriate. *Westinghouse Elec. Corp.,* 638 F.2d at 579–80. *Cf. Detroit Edison Co. v. NLRB,* 440 U.S. 301, 313–317, 99 S.Ct. 1123, 1130–

1132, 59 L.Ed.2d 333 (1979) (holding that lack of protective measures to ensure confidentiality justified non-disclosure of medical information). In *Westinghouse*, the existence of adequate security measures for employee medical information, together with the Government's need for the information to ensure occupational health and safety, justified disclosure of medical data. *Westinghouse*, 638 F.2d at 578–80. Most importantly, as in *Whalen* and *Westinghouse*, a statutory measure exists in this case to prevent the dissemination of confidential patient matters—Federal Rule of Criminal Procedure 6(e).

Rule 6(e), the secrecy provision regarding grand juries, provides in relevant part that:

> A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under ... this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules ... A knowing violation of Rule 6 may be punished as a contempt of court.

Fed.R.Crim.P. 6(e)(2). Under this rule, patient-identifying information could not be disclosed outside the purview of the grand jury, nor could the information be used in other criminal or civil investigation without prior approval of the court on motion of the government. Fed.R.Crim.P. 6(e)(3)(C) & (D); *see also United States v. Sells Eng'r, Inc.*, 463 U.S. 418, 423–24, 103 S.Ct. 3133, 3137–38, 77 L.Ed.2d 743 (1982). Rule 6(e) is everything the Clinic wants, and is entitled to, in terms of a protective order. And, Rule 6(e) provides a statutory scheme to protect disclosure of confidential information comparable to the New York statute which mitigated any concern about unconstitutional intrusions into patients' rights of privacy in *Whalen*. When either confidentiality safeguards are provided by statute or rule, or when there is no proof of Government disclosure of private medical facts, courts routinely refuse to find any unconstitutional intrusion into a patient's privacy by the mere act of Government to require disclosure of otherwise confidential information. *See Skinner v. Railway Labor Execs.*

*Ass'n,* 489 U.S. 602, 626 n. 7, 109 S.Ct. 1402, 1418 n. 7, 103 L.Ed.2d 639 (1989) (holding, in discussing required disclosure to Government of medical information, "[w]hile this procedure permits the Government to learn certain private medical facts that an employee might prefer not to disclose, there is no indication that the Government does not treat this information as confidential, or that it uses this information for any other purpose. Under the circumstances, we do not view this procedure as a significant invasion of privacy."). In a factually similar case, *In re Zuniga*, 714 F.2d at 642, the court refused to quash a subpoena in light of an alleged right of privacy protecting a psychotherapist's patient information, stating:

> In the case at bar the grand jury is seeking limited information pertaining to individual patients. The identity of these patients, as indicated, is already known to the grand jury from the insurance forms in its possession. Thus, as in *Whalen*, the patients' interest in the privacy of the information is diminished.

*Id.* This diminished privacy interest, together with Rule 6(e)'s veil of secrecy which prohibits the dissemination of grand jury information, averted any constitutional issue regarding the disclosure of the identity of a psychotherapist's patients in *Zuniga*. Similarly, there is little need for a protective order limiting the use of subpoenaed information to grand jury proceedings or use of the material in other investigations in light of Rule 6(e)'s protection. And, while the Government attorney who already has knowledge of grand jury material may use that material in the civil segment of the same investigation, *United States v. John Doe*, 481 U.S. 102, 116, 107 S.Ct. 1656, 1664–65, 95 L.Ed.2d 94 (1987), that information cannot be disclosed, and subsequently used, by other government agencies in any manner. *Sells Eng'r, Inc.* 463 U.S. at 430–31, 103 S.Ct. at 3141–42. *See Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1097 (7th Cir.1992). Under this interpretation, Rule 6(e) seems quite sufficient to protect dissemination of patient-identifying information to persons outside of the grand jury investigation, thus protecting the patient's interest in privacy and confidentiality. And, to the ex-

tent that Rule 6(e) may not be as broad as the Clinic would wish in limiting use of the information (it seems to prefer, for instance, prohibiting the same government attorney who conducted the criminal investigation to use the information in the related civil investigation), the court sees no reason, and possibly no authority, to enter a protective order broader than the legislative command of Rule 6(e). Reluctance to enter a broader order is especially great considering the limited role of the court in supervising the grand jury, and the corresponding desire to refrain from interfering with investigations. Accordingly, a protective order is unnecessary.

### III. *Conclusion*

In light of the extensiveness of Federal Rule of Criminal Procedure 6(e)'s protection of matters submitted to the grand jury, there is no reason to grant the requested protective order to prevent dissemination of patient-identifying information. Moreover, this type of information would not be protected by the psychotherapist-patient privilege even if such privilege was found to exist under these circumstances. Accordingly, the Clinic's Motion for a Protective Order is hereby **DENIED.**

Further, concomitant with the secrecy surrounding the grand jury, public dissemination of this ruling would be inappropriate at this time. Accordingly, pursuant to the local rules of this court (specifically S.D.Ind. LR CR–10(c)), the Motion for Protective Order, responses to the Motion, and this court's ruling on the Motion are to **ORDERED** to be maintained by the Clerk of the Court under seal. In order to maintain this secrecy, it is further **ORDERED** that counsel for the movant and the government are not to disclose this ruling or its contents to any person other than representatives of their clients. Counsel are further **ORDERED** that they are to instruct anyone to whom the ruling is disseminated or conveyed that they are also prohibited from disclosing the ruling or its contents to any other persons. Of course, this order does not restrict counsel or the parties from referring to the ruling or its contents in pleadings filed in this matter or in connection with appeals from the ruling. This ruling does, however, restrict counsel from citing or referring to this ruling in pleadings filed in any other case. This order of limitation may be modified upon a request by the movant or the government supported by good cause, or as otherwise directed by the court.

ALL OF WHICH IS ORDERED.