62 F.3d 1222
 32 Fed.R.Serv.3d 846, 95 Cal. Daily Op. Serv. 6323,
95 Daily Journal D.A.R. 10,788
 In re GRAND JURY SUBPOENA SERVED ON MESERVE, MUMPER & HUGHES.
UNITED STATES of America, Plaintiff-Appellee,
v.
JANET GREESON'S A PLACE FOR US, INC.; Janet Greeson; Janet
Greeson's A Place For Us of Van Nuys, Inc.; Janet Greeson's
A Place For Us at Costa Mesa, Inc.; and Janet Greeson's A
Place For Us at Long Beach, Inc., Defendants-Intervenors-Appellants.
 No. 94-56125.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1995.
Decided Aug. 10, 1995.
As Amended Sept. 6, 1995.
 
 Stephen Acker and Derek S. Goulding, Acker, Kowalick & Whipple, Los Angeles, CA, for defendants-intervenors-appellants.
 Steve A. Linick and Ronni B. Maclaren, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, WIGGINS, FERNANDEZ, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 OVERVIEW
 
 1
 Janet Greeson's A Place For Us, Inc., et al., (including Janet Greeson) ("APFU"), appeal a district court's denial of their motion to quash a grand jury subpoena, which ordered them to produce documents sealed by a protective order in an earlier, settled civil litigation. We affirm.
 
 FACTS
 
 2
 Various medical insurance companies brought a civil suit against APFU, alleging fraudulent billing by APFU. According to the insurance companies, APFU submitted bills for the provision of psychiatric care, when in truth APFU operated weight-loss clinics that were not covered by the relevant insurance policies. The insurance companies alleged that they were fraudulently billed in excess of one hundred million dollars. After very lengthy discovery, but before trial, the parties settled the suit. As part of the settlement, the district court granted a protective order concerning the discovery that had already been taken.
 
 
 3
 A grand jury, in connection with a criminal investigation, subsequently subpoenaed Blue Cross' law firm, Meserve, Mumper & Hughes ("MMH"), requesting copies of all documents produced during discovery in the settled civil action. APFU moved to intervene in order to file a motion to quash the subpoena, arguing against modification of the protective order. The district court granted APFU's motion to intervene, but denied the motion to quash the subpoena. Because the subpoena was issued against a third party, this court has jurisdiction to review immediately the denial of the motion to quash. Perlman v. United States, 247 U.S. 7, 13, 38 S.Ct. 417, 419-20, 62 L.Ed. 950 (1918); In re Subpoena to Testify Before Grand Jury (Alexiou), 39 F.3d 973, 975 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 1825, 131 L.Ed.2d 746 (1995).[1]
 
 DISCUSSION
 
 4
 The question of whether a grand jury subpoena trumps a district court's protective order is one of first impression in the Ninth Circuit. Three other circuits have addressed the question, however. Their cases provide a comprehensive background against which we evaluate this issue.
 
 
 5
 I. The Second Circuit's Compelling Need/Extraordinary Circumstances Test
 
 
 6
 In Martindell v. ITT, 594 F.2d 291 (2d Cir.1979), the Second Circuit held that in order to enforce a grand jury subpoena, and gain access to civil discovery protected by a protective order, the Government must demonstrate either "improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need." 594 F.2d at 296. The Second Circuit based its compelling need test on its belief that the most important factor to be weighed in deciding whether to modify a protective order was "the vital function of a protective order issued under Rule 26(c), Fed.R.Civ.P., which is to 'secure the just, speedy, and inexpensive determination' of civil disputes, Rule 1, Fed.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant." 594 F.2d at 295. The court went on to note that this process would be undermined if witnesses were reluctant to testify out of a fear that their testimony would later be used by the Government for criminal investigatory purposes. Id. at 295-96.
 
 
 7
 The Martindell court recognized that there was a countervailing consideration, namely the "public interest in obtaining all relevant evidence required for law enforcement purposes," which favored allowing access to the protected materials. Id. at 296. The court determined that this factor was outweighed by the aforementioned goals of the civil procedure system, however, because " 'the Government as investigator has awesome powers' which render unnecessary its exploitation of the fruits of private litigation." Id. (citation omitted). The Second Circuit reiterated its commitment to the Martindell standard in Palmieri v. New York, 779 F.2d 861 (1985), and in In re Grand Jury Subpoena Duces Tecum (Doe), 945 F.2d 1221 (1991).
 
 
 8
 II. The Fourth and Eleventh Circuits' Per Se Rule
 
 
 9
 The Fourth and Eleventh Circuits have taken quite a different approach to this question, and adopted a per se rule that protective orders cannot shield discovery from grand jury subpoenas. In re Grand Jury (Williams), 995 F.2d 1013 (11th Cir.1993); In re Grand Jury Subpoena, 836 F.2d 1468 (4th Cir.), cert. denied, 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988). Both courts, in cases very similar to the one before us, specifically rejected the compelling need test adopted by the Second Circuit in Martindell.
 
 A. The Fourth Circuit
 
 10
 The Fourth Circuit, in In re Grand Jury Subpoena, identified three interests that potentially are at stake when protective orders butt up against grand jury subpoenas. First, the grand jury has important, independent constitutional status, and is not generally subject to the direction of the courts. It has "sweeping power" to compel the production of evidence. 836 F.2d at 1471. Second, Fifth Amendment rights of deponents may be implicated. Third, protective orders aid civil courts in facilitating resolution of private disputes, thereby furthering Fed.R.Civ.P. 1's goal of "secur[ing] the just, speedy, and inexpensive determination" of civil disputes. If deponents cannot rely upon such protective orders, and instead assert their Fifth Amendment privilege, litigation can be prolonged and its costs increased. 836 F.2d at 1472-73.
 
 
 11
 The In re Grand Jury Subpoena court first explained that the second concern, the Fifth Amendment rights of deponents, is not truly implicated "because the deponents' fifth amendment right against self-incrimination did not require, nor may it depend on, the shield of civil protective orders." 836 F.2d at 1471. Deponents are entitled, instead, to rely on their own silence or upon a grant of immunity to protect against self-incrimination. As to the corollary concern that "the burden of silence in civil litigation may unduly punish an individual for asserting the right," the court answered that "the burden placed on an individual's right to avoid self-incrimination by the institution of a civil lawsuit by a private party does not implicate values protected by the fifth amendment." Id. at 1472. The Fourth Circuit cited, in support, the Supreme Court's statement that "the fifth amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Id. (citing Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 1557-58, 47 L.Ed.2d 810 (1976)).
 
 
 12
 The Fourth Circuit then carefully explained why, in balancing the remaining two interests--the grand jury's authority to gather all relevant evidence versus the district court's interest in facilitating resolution of civil disputes--it favored the former:
 
 
 13
 1) A grand jury has a right to all relevant evidence. Protective orders, if enforced at the expense of grand jury subpoenas, would be "significant impediment[s]" to grand jury investigations. 836 F.2d at 1475. Further, protective orders can keep a grand jury from obtaining not only important and relevant information, but also evidence of impeachment, should deponents testify inconsistently with their depositions in future criminal trials. Protective orders also can "absurd[ly]" shield deponents from perjury charges. Id.
 
 
 14
 2) If protective orders were allowed to stand against grand jury subpoenas, district courts would effectively be given the authority to grant immunity to civil deponents. The power to grant immunity, however, is limited by federal law to the executive branch. 18 U.S.C. Secs. 6002, 6003; Pillsbury Co. v. Conboy, 459 U.S. 248, 261, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983).
 
 
 15
 3) The countervailing benefits of enforcing protective orders at the expense of grand jury subpoenas are limited. Protective orders are not "a substitute for invocation of the [Fifth Amendment] privilege and [they] should not be afforded that status." 836 F.2d at 1475:a) Individuals cannot totally rely on protective orders, for at least three reasons:
 
 
 16
 i) there is always the risk of a leak. And, unlike immunity, there is no assurance that incriminating statements will not later be used against the deponent.
 
 
 17
 ii) Protective orders are subject to modification under Fed.R.Civ.P. 26.
 
 
 18
 iii) Protective orders are often only stopgap measures. Incriminating information effectively suppressed prior to trial is normally disclosed at that time.
 
 
 19
 b) Deponents can, despite protective orders, assert their Fifth Amendment privilege. (Note that fearful deponents are now especially likely to do so, after the rulings of the Fourth and Eleventh Circuits have shown that protective orders are not adequate substitutes for invoking the Fifth Amendment).
 
 
 20
 4) Civil courts have available other tools besides protective orders to "ensure successful resolution of a civil action which is threatened by a deponent's privileged silence." 836 F.2d at 1476-77.
 
 
 21
 a) The court can delay discovery until a pending grand jury investigation is completed.
 
 
 22
 b) The court can hold a pretrial hearing to weed out frivolous assertions of the privilege.
 
 
 23
 c) The court can shift the burden of proof "in accordance with the doctrine that the burden of proof should be placed on the party who is in the best position to provide relevant proof." Id.
 
 
 24
 d) The court can exclude testimony given at a subsequent trial if the same information had been withheld during discovery, pursuant to the privilege, in an effort to thwart discovery.
 
 
 25
 The Fourth Circuit ultimately determined that the costs of enforcing protective orders against grand jury subpoenas were great, while the benefits were small. The court thus concluded that a reasonable balancing of the respective interests at stake "favors enforcement of a grand jury subpoena despite the existence of an otherwise valid protective order." Id. at 1477.
 
 
 26
 The court then explained why it was adopting a per se rule in favor of grand jury subpoenas, rather than "a case-by-case approach of balancing these competing interests." Id. The court explained that even assuming courts were "capable of fairly examining the disparate interests of law enforcement and of the civil courts in individual cases," the adoption of a case-by-case approach would actually "have the effect of undermining both of these interests." Id. (emphasis added). On the one side, grand juries would often be deprived of relevant evidence. And on the other, parties would be unlikely to rely on protective orders, knowing that if the Government could show a compelling need for the evidence in the future, the orders would be modified accordingly.
 
 
 27
 Further, the Fourth Circuit reiterated its belief that even if courts could properly conduct such a balancing test, they do not have the constitutional authority to do so. The executive branch, alone, has the right to determine when to immunize a witness. Lastly, the court noted that a rule permitting a protective order to prevail over a grand jury subpoena "could easily become a tool for delaying criminal investigations." Id. at 1478. That is, all parties who were subject to a grand jury investigation at the same time as a civil dispute would seek protective orders in the latter, forcing the Government to attempt to intervene.
 
 B. The Eleventh Circuit
 
 28
 The Eleventh Circuit has subsequently joined the Fourth Circuit in adopting a per se rule favoring grand jury subpoenas over protective orders, explicitly rejecting the Second Circuit's Martindell test. In Williams, the Eleventh Circuit ruled that "the essential and historic purpose served by the grand jury outweighs the utility served by Rule 26(c) protective orders." 995 F.2d at 1015. The court described at length the grand jury's historical status, its sweeping powers, citizens' duty to appear before it when summoned, and courts' responsibility to compel those subpoenaed to appear. Id. at 1015-16. The Eleventh Circuit also explained that courts are not to interfere in the operations of a grand jury. Id. at 1016.
 
 
 29
 The Eleventh Circuit found that civil courts' interest in using protective orders to help dispose of cases could not compete with the interests in a powerful and independent grand jury. Refuting the Second Circuit's Martindell language that securing the speedy resolution of civil cases was a "vital function" and "the cornerstone of our administration of civil justice," the Williams court stated that "[p]rotective orders are merely a facilitating device and should not be used to shield relevant information from a valid grand jury subpoena." Id. at 1016-17. Turning to the text of the underlying Rule, the court stated: "We find absolutely nothing in Rule 26(c) or its advisory committee notes to support the notion that Congress, in passing on and enacting the Rule, intended to circumscribe the grand jury's authority and subpoena power as the Second Circuit has done." Id. at 1017.
 
 
 30
 After echoing the Fourth Circuit's concerns about the judiciary infringing upon the executive branch's authority to grant immunity, the Williams court added another reason to reject a balancing test and adopt a per se rule: the Martindell test is inherently unworkable. The court noted that the Second Circuit had never defined the terms "compelling need," "extraordinary circumstances," or "improvidence in the original grant of the [protective] order." 995 F.2d at 1018. Further, the Second Circuit had never indicated how prosecutors are supposed to demonstrate "compelling need" when they have a duty to keep grand jury proceedings secret. Lastly, judges, as well, are put in a difficult position by the balancing test:
 
 
 31
 [T]he Second Circuit approach creates a Hobson's choice when, after the judge has induced a witness to incriminate himself by promising to enforce a protective order, the government demonstrates compelling need for the witness' testimony. The judge must choose between (1) going back on his word (thus breeding disrespect for the law in the eyes of the witness, if not the public in general) by honoring the grand jury subpoena, and (2) denying the public its "right to every man's evidence." Either way, the public suffers.
 
 
 32
 Id. at 1019-20.
 
 III. Adoption of the Per Se Rule
 
 33
 We adopt the per se rule of the Fourth and Eleventh Circuits. In re Grand Jury Subpoena and Williams, in their discussions of the factors weighing on both sides, convincingly explain that a grand jury subpoena should, as a matter of course, prevail over a protective order.
 
 
 34
 The Fourth Circuit's exhaustive delineation of the various considerations reveals that allowing protective orders to be enforced at the expense of grand jury subpoenas would yield little benefit, at great cost.
 
 
 35
 The Eleventh Circuit's dogged devotion to the grand jury's constitutional and historical stature, meanwhile, suggests that a per se rule in favor of the grand jury subpoena is not only the practical result, but also the proper one. This deference to the grand jury's independent role finds strong support in Supreme Court precedent. See, e.g., United States v. Williams, 504 U.S. 36, 47-50, 112 S.Ct. 1735, 1742-44, 118 L.Ed.2d 352 (1992) (" 'Rooted in long centuries of Anglo-American history' ... the grand jury ... 'is a constitutional fixture of its own right.' " Id. at 47, 112 S.Ct. at 1742 (citations omitted)). "Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. Over the years, we have received many requests to exercise supervision over the grand jury's evidence-taking process, but we have refused them all." Id. at 50, 112 S.Ct. at 1743.
 
 
 36
 Further, we agree with the Eleventh Circuit that there is nothing in Rule 26's language or commentary to indicate that Congress, in enacting the protective order rule, intended to abrogate the historical investigative powers of the grand jury. See Williams, 995 F.2d at 1017. We also note that nothing in Rule 26's language or commentary indicates that in enacting it Congress intended to give the judiciary the right to grant immunity, when only the executive has heretofore enjoyed that right. See 18 U.S.C. Secs. 6002, 6003; Pillsbury, 459 U.S. at 261, 103 S.Ct. at 616. A Congressional intent to cause such a significant shift in the allocation of traditional powers presumably would have been stated explicitly.
 
 CONCLUSION
 
 37
 For the foregoing reasons, we adopt a per se rule that grand jury subpoenas take precedence over validly issued Rule 26(c) protective orders. Accordingly, we AFFIRM the district court's denial of Appellants' motion to quash the subpoena issued against MMH.
 
 
 
 [1]
 Aetna Life Insurance Co. ("Aetna") subsequently brought a civil suit against APFU for the same scheme. Aetna was not a party to the above-described action. In an attempt to gain access to the voluminous documents that had been produced during discovery in the earlier civil proceedings, Aetna filed a motion to intervene in that action, and it also requested that the district court modify the protective orders it had issued (both the one at issue in this case and an earlier one that the court had executed). The district court refused. In a related case before this panel, we affirm that decision, thereby denying Aetna access to the documents. Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc., et al., 62 F.3d 1217, 1218 (9th Cir.1995). That case has no bearing on the instant case, however. As is clear from our two opinions, we analyze the district court's decision on whether to modify its protective orders for the benefit of a private litigant, and for a grand jury, distinctly differently