### In re GRAND JURY NO. 91–1; GRAND JURY SUBPOENA NO. 16320CR.

#### Civ. A. No. 92–Y–127.

United States District Court,
D. Colorado.

Aug. 12, 1992.

Gerald J. Rafferty, Asst. U.S. Atty., Denver, Colo., for petitioner.

James J. Zak, Zak, Fox, Pehr and Fuller, P.C., Westminster, Colo., for respondent.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Petitioner Mental Health Center moves to quash a grand jury subpoena duces tecum seeking the entire medical records of a former patient. The issue is adequately briefed and oral argument will not materially aid its resolution. Because it is unclear on the present record whether the privilege has been properly invoked, the motion will be held in abeyance for 20 days.

The grand jury is investigating allegations that the patient's son violated the federal mail fraud statute, 18 U.S.C. § 1341. The government alleges that after the patient's death, his son continued to receive the deceased patient's pension benefits. The son claims that he did not know of his father's death, and the grand jury seeks the patient's medical records to prove that the son was, in fact, aware of his father's death.

Petitioner argues that the subpoena should be quashed under Colorado's mental health confidentiality statute, C.R.S. § 27–10–120. However, in a federal criminal prosecution and investigation, federal privilege law preempts a more protective state law. Fed.R.Evid. 501 provides: "[T]he privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Thus, the dispositive question here becomes whether federal common law would protect the information sought by the grand jury. *See, Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980); *In re Matter of Grand Jury Impaneled Jan. 21, 1975*, 541 F.2D 373, 380 (3rd Cir.1976). *See generally*, 2 *Weinstein's Evidence* 501–21 (1992), (In criminal cases, questions of privilege are analyzed under federal common law).

Whether a federal common law psychotherapist-patient privilege exists in the Tenth Circuit remains undecided. *Dixon v. City of Lawton*, 898 F.2d 1443, 1450 (10th Cir.1990); *United States v. Crews*, 781 F.2d 826, 830–31 (10th Cir.1986). In *Dixon*, the court held that, if it ever decided to recognize this privilege, it would look to Supreme Court Standard 504. *Dixon*, 898 F.2d at 1450. Using Standard 504, the court then held that the privilege would not apply in that case and, therefore, the court did not need to decide whether it would recognize the privilege. *Id.* Here, however, the question is squarely presented and requires resolution.

In promulgating the federal rules of evidence, the advisory committee proposed, and the Supreme Court approved, Standard 504 as a rule. Preferring a more flexible approach, Congress deleted all rules concerning specific privileges and drafted the current form of Rule 501 in their place. However, even though proposed Rule 504 was not ultimately adopted by Congress, it remains a persuasive statement of federal common law on the psychotherapist-patient privilege. Not only does it coherently and cogently set out the parameters of that privilege, but also it provides a strong indication that the Supreme Court would rec-

ognize the existence of such a privilege. As Judge Weinstein noted:

> The Standards are the culmination of three drafts prepared by an Advisory Committee consisting of judges, practicing lawyers, and academicians. In its seven years of work, the Committee considered hundreds of suggestions received in response to the circulation of drafts throughout the legal community. Finally, they were adopted by the Supreme Court by an eight to one vote. The rule against advisory opinions is only slightly more violated by giving weight to this vote than it would have been had Congress not vetoed these provisions, and they had become "Rules," rather than "Standards."

2 *Weinstein's Evidence* 501–32 (1992).

Moreover, adoption of this privilege recognizes the special nature of the psychotherapeutic process. That process is dependent on confidential personal revelations about matters which many patients are reluctant to discuss.

> Unlike the patient with physical ailments or complaints, who will likely consult a physician regardless of whether confidentiality is guaranteed, a neurotic or psychotic individual may seek help only if he is assured that his confidences will not be divulged, even in a courtroom. Thus it has been recognized that a "psychiatrist" must have his patient's confidence or he cannot help him. Even though the suppression of relevant information may result in less accurate fact finding, "the social value which effective psychiatric treatment has for the community far outweighs the potential loss of evidence."

*Id.* at 504–18.

■ Therefore, I hold that the psychotherapist-patient privilege set out in Standard 504 should be recognized as the federal common law in this district. This privilege, then, controls resolution of petitioner's motion to quash. The question now is whether the information sought in the subpoena is entitled to protection.

■ Standard 504 protects confidential communications among the patient, therapist, or others participating in the patient's treatment made for the purposes of diagnosis or treatment of mental or emotional conditions. The standard differs from C.R.S. 27–10–120 in that it does not protect medical records in toto, but rather only protects communications that were intended to be confidential. Moreover, the standard does not automatically prohibit disclosure of such information. Rather, it prohibits disclosure *only if the privilege is claimed* by the patient, his guardian or conservator, or the personal representative of a deceased patient.

Here, petitioner may have standing to raise the issue of this privilege because the subpoena seeks information that could be protected. Under Standard 504, however, petitioner cannot effectively resist this subpoena until one competent to claim the privilege does, in fact, claim it. There is no showing that petitioner is the patient's personal representative and, therefore, it cannot claim the privilege on his behalf. Indeed, there is no indication that a lawful personal representative has been appointed for any purpose at all. Therefore, I will defer ruling on this motion until August 31, 1992 so that decedent's personal representative, if any, may appear to claim this privilege. If no duly appointed personal representative appears by that time with authority to claim the privilege, the motion to quash will be denied.

Accordingly, IT IS ORDERED THAT:

Petitioner's motion to quash will be held in abeyance until the close of business on August 31, 1992 so as to allow decedent's personal representative time to appear here and claim the psychotherapist-patient privilege.