**In re The AUGUST, 1993 REGULAR GRAND JURY. (Hospital Subpoena).**

**Misc. No. 93–63.**
**Grand Jury Subpoena No. KMS–41–04.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 20, 1994.

Rebekah N. Murphy, N. Kent Smith, Hall Render Killian Heath & Lyman, P.C., Indianapolis, IN, for the Subpoenaed Hosp.

Kathleen M. Sweeney, Asst. U.S. Atty., Indianapolis, IN, for the Government.

**Entry Regarding [Hospital's] Motion to Quash Subpoena & Motion for Protective Order, and United States' *Ex Parte* Motion for Order Permitting Disclosure of Patient Medical Records**

TINDER, District Judge.

As part of an ongoing investigation into possible criminal conduct by [a psychotherapist][1] and other health providers, a grand jury sitting in the Southern District of

1. To preserve both the secrecy of the grand jury investigation and the privacy of those being investigated by the grand jury, all names, titles, or references in this entry which might in any man-

Indiana subpoenaed patient records from the [Hospital]. Because [the psychotherapist] exercised staff privileges at [the Hospital] and treated [Hospital] patients, the hospital has been asked to produce the following:

> Any and all documents related to the discharge of patients treated by [the psychotherapist] for the period of July, 1990 through and including November, 1990. Documents should include, but not be limited to, billing information, discharge summaries, admissions summaries, etc.

Mot. to Quash Subpoena at Ex. B. On January 25, 1994, in response to the subpoena, [the Hospital] filed this motion to quash the subpoena and requested a protective order limiting the disclosure of patient records. The basis for quashing the subpoena, argues [the Hospital], is the Government's failure to obtain the necessary order authorizing the release of certain drug and alcohol abuse treatment records which are purportedly protected from disclosure by federal statute. *See* 42 U.S.C.A. § 290dd–2 (West Supp. 1994).[2] As for the protective order, [Hospital] asks the court to limit the Government's use of the psychiatric information contained in the records to the grand jury investigation only, and to prohibit the Government from using the data in subsequent criminal or civil judicial proceedings absent prior notice to [the Hospital] and approval of the court. In an effort to quell [the Hospital's] motion to quash, the Government responded by filing the appropriate request, under seal and pursuant to § 290dd–2(b)(2)(C), for a court order authorizing disclosure of the patient records. In all other respects, the Government opposes [the Hospital's] requests.

## I. Authorization to Disclose Drug and Alcohol Treatment Records

■ Disclosure of certain medical records, related to the treatment of drug and alcohol abuse patients in federally funded treatment programs, is controlled by a provision of the Public Health Service Act, 42 U.S.C. § 290dd–2, which provides:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall ... be confidential and disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

42 U.S.C.A. § 290dd–2(a) (West Supp.1994). Behind this enactment lies a strong belief that the serious problems faced by substance abusers can only be countered by medical treatment, the effectiveness of which depends largely on the patient's confidence in the confidentiality of his treatment, including both the fact he is receiving help for his problem as well as statements made during treatment to the program providers. *See United States v. Eide,* 875 F.2d 1429, 1436 (9th Cir.1989); *United States v. Cresta,* 825 F.2d 538, 552 (1st Cir.1987), *cert. denied sub nom. Impemba v. United States,* 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988); *United States v. Graham,* 548 F.2d 1302, 1314 (8th Cir.1977). By creating a statutory presumption that a patient's records will be protected from disclosure absent a compelling reason, the treatment of abusers is made that much easier. Of course a patient can always consent to disclosure of his records. 42 U.S.C. § 290dd–2(b)(1).[3] Even if, however, the records are deemed protected, and

---

ner identify those subject to investigation have been replaced with non-identifying, generic terms. Each substitution in the original text, made for the purposes of publication, is contained within brackets ( [ ] ).

2. Before October 6, 1992, the recodification contained in § 290dd–2 was distributed between 42 U.S.C. § 290dd–3 (alcohol abuse treatment records) and § 290ee–3 (drug abuse treatment records). The new § 290dd–2 combined the two sections under the umbrella term "substance abuse" treatment records, but in all other substantive respects remains identical to the previous statutes.

3. The relevant provision provides:

> The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances and for such purposes as

even if the patient fails or refuses to consent, disclosure is permitted in a few prescribed statutory circumstances:

> Whether or not the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, gives written consent, the content of such record may be disclosed as follows:
>
> (A) To medical personnel to the extent necessary to meet a bona fide medical emergency.
>
> (B) To qualified personnel for the purpose of conducting scientific research management audits, financial audits, or program evaluation, but such personnel may not identify, directly or indirectly, any individual patient in any report of such research, audit, or evaluation, or otherwise disclose patient identities in any manner.
>
> (C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

*Id.* § 290dd–2(b)(2). While the extent disclosure requirements may vary depending on the exact nature of the records (as will shortly be seen), an overarching and universal precondition to disclosing protected information is satisfaction of one of these three tests. Here, however, the Government argues neither the existence of a medical emergency (§ 290dd–2(b)(2)(A)) nor the information is sought to assist in auditing the [Hospital's] program (§ 290dd–2(b)(2)(C)); instead it focuses on the third circumstance for disclosure and seeks to establish the existence of "good cause" to support a court order releasing the data. As the party seeking disclosure of the records held by [the Hospital],

the Government bears the burden of establishing "good cause." *Cresta,* 825 F.2d at 552; *United States v. Smith,* 789 F.2d 196, 205 (3d Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).

Pursuant to authority granted in § 290dd–2d(g), the Secretary of the Department of Health and Human Service promulgated regulations implementing the statutory disclosure provisions. *See* 42 C.F.R. §§ 2.1–2.67 (1994). Section 2.66 of the rules, which the Government argues is the applicable standard, dictates "[p]rocedures and criteria for orders authorizing disclosure and use of records to investigate or prosecute a program or the person holding the records." *Id.* § 2.66. And indeed it is the correct set of rules because the term "program," defined as "a person which in whole or in part holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment, or referral for treatment, ..." *id.* § 2.11, is broad enough to encompass [the psychotherapist] or any other therapists, the targets of the grand jury investigation and a provider of substance abuse counseling at [the Hospital]. Each of the prerequisites to a court order authorizing disclosure contained in § 2.66, except satisfaction of the "good cause" test (discussed below), seem easily satisfied: (1) the grand jury, granted broad authority to investigate violations of federal criminal statutes, is an "investigative, law enforcement, or prosecutorial agency having jurisdiction over the program's or person's activities;" *id.* § 2.66(a)(1); (2) as allowed by regulation, the Government filed this application separately "against a program or the person holding the records," and it appears "the patient records are needed to provide material evidence," *id.* § 2.66(a)(2), inasmuch as they contain data of the type and quantity of treatment rendered to patients by treatment providers which can be compared against bills submitted to federally-funded medical programs. Other portions of § 2.66, such as § 2.66(b) regarding post-order notice and § 2.66(d) concerning limits on the use of disclosed information, stipulate the contents of any order the court might issue authorizing disclosure, rather

---

may be allowed under regulations prescribed pursuant to subsection (g) of this section.

42 U.S.C.A. § 290dd–2(b)(1).

than preconditions to disclosure. Aside from the most vital prerequisite to disclosure—satisfaction of the "good cause" test—the Government so far demonstrates the necessary factors to procure a court order allowing release of the confidential information.

■ The Government does not dispute that some, if not all, of the materials sought in the subpoena fall within the protection § 290dd–2—the documents contain information as to the identity, treatment, and diagnosis of patients in both drug and alcohol abuse treatment programs at the [Stress Center] in [the Hospital] that receives federal funding for these programs. *See* 42 C.F.R. § 2.11 (1993) (defining terms and delimiting applicability of statute); 42 C.F.R. § 2.12 (1993) (discussing applicability of provisions). Because the regulations treat different types of information dissimilarly, however, merely agreeing the records contain data protected by § 290dd–2 is not enough. Instead, the information must be differentiated and categorized as either "confidential communications" or as something other than confidential communications. Prior to an amendment in 1987, the regulations explicitly denominated this latter category as "objective data," consisting of all information regarding a patient's treatment in a program except "communications by a patient to personnel of the program...." 42 C.F.R. § 2.63(a) (amended 1987). The subsequent amendment inverted the phrasing of the regulations and is now positively drafted in terms of "confidential communications":

(a) A court order under these regulations may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only if:
(1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties;
(2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape,

kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or

(3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communication.

42 C.F.R. § 2.63(a) (1994). Distinguishing between confidential communications and other information thus still has a significant effect: Ordinary, run-of-the-mill objective data (i.e. not confidential communications) is disclosable if the Government meets the "good cause" test established in § 290dd–2(b)(2)(C); confidential communications, on the other hand, are disclosed only if the "good cause" test is met *and* one of the three express circumstances of disclosure outlined in § 2.63(a) is also established. *Conway v. Icahn & Co., Inc.*, No. 89 Civ. 3995 (RJW), 1993 WL 205136, *4 (S.D.N.Y. May 10, 1993); *Cybok v. Niagara Mach. & Tool Works*, Civ.A. No. 90–2721, 1990 WL 182126, *2 (E.D.Penn. Nov. 26, 1990); *Mahoney v. Village of Fox Lake*, No. 90–C–1415, 1990 WL 251808, *3 (N.D.Ill. Dec. 27, 1990).

### A. Confidential Communications

■ Although the Government fails to address this point, [the Hospital] points out that confidential communications permeate many of the records sought in the grand jury subpoena. If so, the materials could only be disclosed if the Government had proven one of the three exceptions to disclosure in § 2.63(a) of the regulations; inasmuch as it failed to even notice the important distinction between confidential communications and other data, it certainly likewise failed to carry its burden regarding the exceptions to protection. Nonetheless, an independent review of § 2.63(a) demonstrates, quite quickly, the inapplicability of any disclosure provision. Knowing the grand jury is investigating allegedly fraudulent billing practices by a physician automatically rules out the possibility of the disclosure being "necessary to protect against an existing threat to life or of serious bodily injury...." 42 C.F.R. § 2.63(a)(1). Nor is there any indication any patient has, "in connection with litigation or an adminis-

trative proceeding, . . . offer[ed] testimony or other evidence pertaining to the content of the confidential communication." *Id.* § 2.63(a)(2). The only arguably relevant portion of § 2.63(a) is that which allows disclosure if "necessary in connection with investigation or prosecution of an extremely dangerous crime. . . ." *Id.* § 2.63(a)(2). But to qualify under this part the Government must convince the court that fraudulent billing is an extremely dangerous crime, a category of illegal activities which the regulations illustrate with crimes such as "one which directly threatens loss of life or serious bodily injury," including murder, rape, kidnapping, armed robbery, assault with a deadly weapon and child abuse and neglect. *Id.* It is possible, though doubtful, the Government could make a persuasive argument that fraud is sufficiently analogous to these violent crimes to fall within § 2.63(a)(2). No such argument being proffered, however, eliminates the need to directly resolve the question. Suffice it to note the Government has simply failed to satisfy, as is its burden, the provisions of § 2.63 which allow disclosure of confidential communications. While records containing information other than confidential communications might be disclosable if "good cause" is shown (discussed below), under no circumstances can [the Hospital] divulge the protected sphere of information—confidential communications—in its custody.[4]

## B. Non–Confidential Communications

■ Assuming information other than confidential communications might be contained in [the Hospital's] patient files, and assuming the grand jury wants that information (and presumably it does based on the Government's motion), left to be answered is whether that information may be disclosed. As indicated above, even if a patient does not consent to the release of information, the material may be disclosed "[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing

good cause therefor, including the need to avert a substantial risk of death or serious bodily harm." 42 U.S.C.A. § 290dd–2(b)(2)(C). Unlike confidential communications, which are governed by § 2.65 and are given heightened protection, information of a non-confidential communication nature is disclosable merely subject to the "good cause" test. The statute elaborates on the content of "good cause," indicating that "in assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." *Id.* The regulations promulgated pursuant to the statute add a little more to the equation:

> An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:
>
> (1) Other ways of obtaining the information are not available or would not be effective; and
>
> (2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64(d) (as incorporated and made applicable to criminal investigations of programs by 42 C.F.R. § 2.66(c)). The first part, § 2.64(d)(1) is an additional requirement above and beyond that included in the statute; § 2.64(d)(2), however, merely explains that the weighing required in § 290dd–2(b)(2)(C) contemplates disclosure only if the need for the information is greater than the harm. Thus, two distinct criteria must be evaluated in deciding if "good cause" for disclosure exists.

1. *Alternative Sources*—The Government asserts that no other means of attaining the subpoenaed information exist—only the patient files held by [the Hospital] contain descriptions of the services rendered to the

---

4. This does not rule out the possibility of redacting files which contain protected information to remove any confidential communications if the remaining information contained in the record is otherwise disclosable. While the actual records are not before the court, eliminating the possibility of a definitive ruling stating exactly what is,

and is not, protected, the parties should implement the general holding of the court in producing subpoenaed material. Any disputes regarding classification of supposedly protected matter can be brought before the court, *in camera*, at some later time for precise rulings if necessary.

patients and the amounts charged for the treatment. This goes a little far, however, considering the grand jury could subpoena the patients themselves to testify as to the type and extent of treatment they received or could ask those who prepared the bills for services provided by [the psychotherapist] and others exactly what services were provided and billed. Merely acknowledging alternative sources exist does not, however, sound the deathknell for the Government's motion; if those sources are not "available or would not be effective," the Government may still have the records. While nothing suggests the witnesses mentioned above are unavailable, their testimony may not be "effective" in securing the information the Government seeks. Notably the rule does not require the alternate source to be "as effective" as the patient records; seemingly eschewing any sort of comparative analysis between the efficacy of the patient records and the other source of the information. Instead, it simply asks if the alternate source of evidence is "effective," meaning it produces the intended result or effect ("effectual" or "efficacious"). THE NEW SHORTER OXFORD ENGLISH DICTIONARY 786–87 (4th ed. 1993). Here the Government needs to know the exact services rendered and the extent of treatment provided to numerous patients over several years. To .call each patient to testify about events which may have occurred far in the past, and expect the level of detail and precision necessary for the Government to build a case of fraudulent billing simply asks to much. The ability of a patient, for example, to recall the exact nature of their treatment may be hampered by the condition for which they were being treated. To successfully prosecute a health care provider for overbilling, the Government must be able to demonstrate the amounts billed exceeded the actual services rendered to patients—a task requiring more than the casual recollections of possibly disinterested witnesses. Saying this also illuminates the ineffectiveness of relying on the testimony of bookkeepers or others employed by [the Hospital] to yield the necessary information; the sheer volume of patients and bills requiring their attention over a span of time bodes a high probability of inaccuracy and could not produce the intended result of the investigation. Thus, alternative sources of information would simply not be effective.

2. Does "[t]he public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services?" 42 C.F.R. § 2.64(d)(2). The brunt of the alleged criminal conduct involves [the psychotherapist] overbilling medical insurers for treatment provided to many patients, including those seen at [the Hospital]. Beyond the possible private harm incurred by private insurers, the target of the investigation supposedly overbilled public medical insurance programs (medicare and medicaid) resulting in excess costs to taxpayers and the diversion of monetary resources from legitimate to illegitimate ends. Considering both the private and public harm at issue, assigning great value to the public interest is not difficult. The grand jury's need for the information was discussed above, where it was noted that no effective alternative source exists for the billing information sought to prove the Government's case. Moreover, the objective date composed of billing information and services rendered seems highly relevant to the grand jury investigation. *Cf. United States v. Smith,* 789 F.2d 196, 206 (3d Cir.1986) ("The public interest in confidentiality outweighs the defendant's needs when the records would provide little new material that could be used to impeach the witness's credibility."); *In re Grand Jury Subpoenas,* No. CIV–85–1436E, 1986 WL 2166, *1 (W.D.N.Y. Feb. 12, 1986) (refusing to order disclosure because "[t]he government has not provided any information as to the need for disclosure—other than the fact of a grand jury investigation in and of itself."). Having already decided no confidential communications can be divulged, and keeping in mind the latitude given a court in fashioning an appropriate disclosure order which protects the records even after disclosure, minimal (if any) harm will come to the patients, the physician-patient relationship, or the treatment services if mere objective information is released by [the Hospital]. This conclusion contemplates that the universe of disclosable information consists of, in the main, patients' names and correlated dates and types of treatments described in general terms. Any

apprehension either [the Hospital] or the patients might harbor regarding possible public disclosure of the patient's identities is alleviated by obligations of secrecy attendant to grand jury proceedings, FED.R.CRIM.P. 6(e)(2), and the disclosure regulations themselves, which require the deletion of patient identifying information before any record is made available to the public, 42 C.F.R. § 2.66(d). Given all this, the need for the materials exceeds any harm flowing from disclosure.

Because the Government has satisfied each of the prerequisites for a court order authorizing disclosure of patient records, contained in § 290dd–2(b)(2)(C) and § 2.66, production of the patient records protected by § 290dd–2 will be authorized. Of course while this order "acts to remove the prohibition on disclosure, . . . it does not compel disclosure." 42 C.F.R. § 2.3(b)(1). That is accomplished by the issuance of a lawful subpoena by an authorized agency, such as that issued by the grand jury earlier in this case. Entry of an order by the court enabling [the Hospital] to disclose the data merely removes any impediments to divulging the records which § 290dd–2 may have imparted. Additionally, disclosure of the records is limited by the requirements contained in the regulations and other obligations imposed by the court to protect the privacy of patients which will be incorporated into an order issued contemporaneously with this entry.

## II. Request for Protective Order

■ Assuming the court might authorize release of the patient records, [the Hospital], noting some of the records subject to the grand jury subpoena contain sensitive "psychological histories and/or thoughts, detailed psychological profiles, accounts of therapy sessions, and detailed treatment plans," requests a protective order limiting the use of this information to grand jury proceedings unless prior notice to [the Hospital] is provided and the approval of this court is sought and granted. Having already determined that confidential communications between physicians and patients during treatment in the [Hospital] substance abuse program is protected by § 290dd–2, the only "sensitive" information possibly needing the shield of a protective order must consist of the confidential contents of records for patients who are not in a substance-abuse program but which fall within the ambit of the subpoena as being treated by [the psychotherapist].[5] [The Hospital] proffers two different theories to support its motion. First, it argues the patients enjoy a constitutional right of privacy to the contents of their medical records which would be violated if the data was released to the public. Second, [the Hospital] urges the application of a psychotherapist-patient privilege to protect the confidential communications contained within the records. Under Rule 17(c) of the Federal Rules of Criminal Procedure, a party may move to quash a subpoena and the court may, if the subpoena is unreasonable or oppressive, quash or modify the subpoena. FED.R.CRIM.P. 17(c). Whether one requests a protective order or asks the court to modify a subpoena, the effect is the same and Rule 17(c) must be satisfied in either instance. See Branzburg v. Hayes, 408 U.S. 665, 710, 92 S.Ct. 2646, 2671–72, 33 L.Ed.2d 626 (1972) (Powell, J., concurring) (remarking that party can challenge grand jury subpoena with motion to quash and for protective order); In re Grand Jury Proceedings Under Seal, 947 F.2d 1188, 1189 (4th Cir.1991) (construing motion for protective order as motion to quash). Thus, the inquiry is whether disclosure of confidential communication between patients and

5. All the data subject to the grand jury subpoena can be neatly divided into two categories, with each category consisting of two subcategories. Category I contains the records for substance abuse program patients which fall within the protective sphere of § 290dd–2. This, in turn, can be separated into confidential communications (absolutely protected in this instance) and objective data (released in this instance). Category II includes all other files—those of non-substance abuse program patients—which are also divisible into two subcategories of confiden-

tial communications and non-confidential information. [The Hospital's] request for a protective order is limited to confidential communications and other sensitive data, thus eliminating from consideration the objective, or non-confidential communication, subcategories from each category. The earlier discussion regarding § 290dd–2 disposed of any issues surrounding the confidential communications aspect of Category I; thus, all that remains to be considered for purposes of the protective order is the Category II subcategory of confidential communications.

their therapists to the grand jury is unreasonable or oppressive under the circumstances. Before beginning this analysis, however, a word ought to be offered about the independent nature of the grand jury and the general reluctance to interfere or invade its province. As the Supreme Court recently stated:

> The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush.

*United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297–98, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991). Moreover, the grand jury is, and should be, recognized as an entity existing independent of the judiciary:

> The whole theory of [the grand jury's] function is that it belongs to no branch of the institutional government, serving as a kind of buffer or referee between the Government and the people. Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the judiciary branch has traditionally been ... at arm's length.

*United States v. Williams*, — U.S. —, —, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992). Thus, "[a] district court simply does not intervene in the normal operations of a grand jury investigation." *In re Grand Jury Proceedings*, 995 F.2d 1013, 1016 (11th Cir. 1993). Flowing from these notions is the presumption that, "absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority," and "the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *Id.* 498 U.S. at 301, 111 S.Ct. at 728. Only upon the strongest showing of need will this court venture into the realm occupied by the grand jury.

### A. Constitutional Right of Privacy

■ [The Hospital], noting the Supreme Court has recognized a limited "right of privacy" which protects the confidentiality of a person's medical records, argues this right protects patient records from the reach of the grand jury subpoena. This argument derives from the Supreme Court's decision in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1976), involving a New York statute which required medical personnel to divulge, and the state to maintain in a computer database, the names and addresses of everyone who obtained certain prescription drugs in New York. Addressing the contention that mandatory disclosure of this information violated a patient's right of privacy, the Court noted that: "[t]he cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 598–600, 97 S.Ct. at 876–77. These privacy interests have become known, respectively, as the "confidentiality" and "autonomy" branches of the constitutional right of privacy. *Pesce v. J. Sterling Morton High Sch. Dist.*, 830 F.2d 789, 796 (7th Cir.1987). Though *Whalen* did indeed recognize a right of privacy—that is confidentiality—in medical records, that right "does not protect against any and every compelled disclosure...." *Id.* at 797; *Whalen*, 429 U.S. at 599, 97 S.Ct. at 876–77. Indeed, after recognizing the confidential nature of medical records, the *Whalen* court refused to find the required disclosure of medical information to the state unconstitutional because:

> Unquestionably, some individuals' concern for their own privacy may lead them to avoid or to postpone needed medical attention. Nevertheless, disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient.

*Id.* at 602, 97 S.Ct. at 877–78. Thus, *Whalen* suggests, and later decisions agree, the confidentiality prong of the right of privacy offers only limited protection to a narrow class of information, and that the right does not protect information from disclosure if the individual's interest in privacy is outweighed by

the government's interest in disclosure. *See In re Grand Jury Proceedings,* 867 F.2d 562, 565 (9th Cir.), *cert. denied sub nom. Doe v. United States,* 493 U.S. 906, 110 S.Ct. 265, 107 L.Ed.2d 214 (1989); *Pesce,* 830 F.2d at 796–97 (applying both a balancing test and sliding scale approach); *Broucki v. Ryan,* 827 F.2d 836, 841 (1st Cir.1987) (adopting balancing test); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir.1980) (same).

Assuming (but not deciding) a constitutional right of privacy attaches to the psychotherapist-patient relationship and that [the Hospital] is able to assert the patients' right, the sole question is whether the protective order sought by [the Hospital] is necessary to prevent the disclosure of this allegedly constitutionally protected information to persons other than the grand jury. *Whalen* specifically reserved decision on a very similar question, namely whether the right of privacy would be violated if, after collection of the information, the data was publicly disclosed, contrary to the New York statute which prohibited public dissemination of the information. *Whalen,* 429 U.S. at 605–606, 97 S.Ct. at 879–880. Noting that "[t]he right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures," *id.* at 605, 97 S.Ct. at 879, the Court stated:

> Recognizing that in some circumstances that duty arguably has its roots in the Constitution, nevertheless New York's statutory scheme ... evidence[s] a proper concern with, and protection of, the individual's interest in privacy. We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data—whether intentional or unintentional—or by a system that did not contain comparable security provisions.

*Id.* at 605–06, 97 S.Ct. at 879–80. Thus, the existence of statutory measures to ensure protection of the confidentiality of patient information obviates any constitutional concerns about disclosure of constitutionally protected matter, unless, of course, that material is disclosed in violation of the established protective measures. Despite the limited relevance of confidential communication contained in the records of patients to the grand jury's investigation, the existence of a statutory scheme to protect the information from disclosure obviates any constitutional infirmity. *Westinghouse Elec. Corp.,* 638 F.2d at 579–80. *Cf. Detroit Edison Co. v. NLRB,* 440 U.S. 301, 313–317, 99 S.Ct. 1123, 1130–32, 59 L.Ed.2d 333 (1979) (holding that lack of protective measures to ensure confidentiality justified non-disclosure of medical information). Here, as in *Whalen,* statutory measures exist to prevent the dissemination of confidential patient matters—Federal Rule of Criminal Procedure 6(e).[6]

> Rule 6(e) provides in relevant part that:
>
> A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under ... this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules ... A knowing violation of Rule 6 may be punished as a contempt of court.

FED.R.CRIM.P. 6(e)(2). Under this rule, patient records could not be disclosed outside the purview of the grand jury, nor could the information be used in other criminal or civil investigation without prior approval of the court on motion of the government. Fed. R.Crim.P. 6(e)(3)(C) & (D); *see also United States v. Sells Eng'r, Inc.,* 463 U.S. 418, 423–24, 103 S.Ct. 3133, 3137–38, 77 L.Ed.2d 743 (1982). Rule 6(e) is everything the [Hospital] wants, and is entitled to, in terms of a protective order. And, Rule 6(e) provides a statutory scheme to protect disclosure of confidential information comparable to the New York statute which mitigated any concern about unconstitutional intrusions into patients' pri-

---

**6.** Of course if [the Hospital's] protective order request was directed towards those records which fall under the auspices of 42 U.S.C. § 290dd–2, different portions of that statute and the regulations promulgated thereunder would adequately protect the patient records, again dispelling concerns of constitutional invasions of privacy. Because, however, that data is not at issue, the point need not be reached.

vacy in *Whalen.* In situations where either confidentiality safeguards are provided by statute or rule, or lacking proof the Government will disclose private medical facts, courts routinely refuse to find any unconstitutional intrusion into a patient's privacy by the mere fact the Government requires disclosure of otherwise confidential information. *See Skinner v. Railway Labor Execs. Ass'n,* 489 U.S. 602, 626 n. 7, 109 S.Ct. 1402, 1418 n. 7, 103 L.Ed.2d 639 (1988) (holding, in discussing required disclosure to Government of medical information, "[w]hile this procedure permits the Government to learn certain private medical facts that an employee might prefer not to disclose, there is no indication that the Government does not treat this information as confidential, or that it uses this information for any other purpose. Under the circumstances, we do not view this procedure as a significant invasion of privacy."). In a factually similar case, *In re Zuniga,* 714 F.2d 632, 642 (6th Cir.1983), the court refused to quash a subpoena in light of an alleged right of privacy protecting a psychotherapist's patient information, stating:

> In the case at bar the grand jury is seeking limited information pertaining to individual patients. The identity of these patients, as indicated, is already known to the grand jury from the insurance forms in its possession. Thus, as in *Whalen,* the patients' interest in the privacy of the information is diminished.

*Id.* This diminished privacy interest, together with Rule 6(e)'s veil of secrecy which prohibits the dissemination of grand jury information, averted any constitutional issue regarding the disclosure of the identity of a psychotherapist's patients in *Zuniga.* Similarly, there is little need for a protective order limiting the use of subpoenaed information to grand jury proceedings or preventing use of the material in other investigations in light of Rule 6(e)'s protection. And, while the Government attorney who already has knowledge of grand jury material may use that material in the civil segment of the same investigation, *United States v. John Doe,* 481 U.S. 102, 116, 107 S.Ct. 1656, 1664–65, 95 L.Ed.2d 94 (1987), that information cannot be disclosed, and subsequently used, by other government agencies in any manner. *Sells Eng'r, Inc.* 463 U.S. at 430–31, 103 S.Ct. at 3141–42. *See Martin v. Consultants & Administrators, Inc.,* 966 F.2d 1078, 1097 (7th Cir.1992). By this view, Rule 6(e) seems quite sufficient to protect dissemination of confidential information to persons outside of the grand jury investigation, thus protecting the patient's interest in privacy and confidentiality. And, to the extent that Rule 6(e) may not be as broad as [the Hospital] would wish in limiting use of the information, the court sees no reason, and possibly no authority, to enter a protective order broader than the legislative command of Rule 6(e).[7] Reluctance to enter a broader order is especially great considering the limited role of the court in supervising the grand jury, and the corresponding desire to refrain from interfering with investigations. Accordingly, a protective order is unnecessary to prevent a constitutional invasion of privacy.

### B. Psychotherapist–Patient Privilege

■ Next, [the Hospital] argues a psychotherapist-patient privilege protects from disclosure the objective patient data contained in the records. Granted, Rule 501 of the Federal Rules of Evidence authorizes courts to construe and apply evidentiary privileges:

---

7. [The Hospital] argues that Rule 6(e) is ineffective in protecting the patient records because, as a non-party to this proceeding, [the Hospital] would not receive notice of any attempt by the Government to seek further use or disclosure of the records pursuant to Rule 6(e). Nothing in *Whalen* suggests, however, that statutory protection schemes are insufficient merely because, as [the Hospital] readily denominates itself, a non-party custodian may not have the ability to later contest disclosure. Despite lack of notice provisions, Rule 6(e) limits the use of the grand jury evidence and only allows further dissemination of the material upon order of the court. *See* FED.R.CRIM.P. 6(e)(3)(C). Moreover, Rule 6(e) grants the Government an unequivocal right to make certain uses of grand jury evidence with or without permission of the court. *Id.* 6(e)(3)(A). While [the Hospital] may prefer some greater protection of patient records than that afforded by Rule 6(e), it has failed to offer a compelling justification for this court to exceed its authority under the rules and to provide that additional protection. Rule 6(e), notwithstanding its failure to account for the interests of a non-party like [the Hospital], more than adequately protects the interests of those who risk any harm from disclosure—the patients.

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness [or] person ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

FED.R.EVID. 501. In appropriate circumstances Rule 501 may allow a court to recognize the existence of a psychotherapist-patient privilege if warranted by the balancing test established in *Memorial Hosp. v. Shadur,* 664 F.2d 1058, 1061–62 (7th Cir.1981). However, assuming (but not deciding) a privilege applies to the information sought in the present case, [the Hospital] hardly has standing to invoke its protection on behalf of the patients whose records are sought. If the privilege applied, Proposed Federal Rule of Evidence 504 would be the source for the precise scope and application of the privilege. This rule, although rejected by Congress, provides a thorough definition of the privilege and is readily employed by most courts when the circumstances require application of the psychotherapist-patient privilege. *E.g., In re Grand Jury,* 795 F.Supp. 1057, 1059 (D.Colo.1992); *In re Grand Jury Subpoena,* 710 F.Supp. 999, 1005 (D.N.J.1989). In addition to the patient or the patient's guardian, under Rule 504(c) "[t]he person who was the psychotherapist may claim the privilege but only on behalf of the patient," and "[h]is authority so to do is presumed in the absence of evidence to the contrary." PROPOSED FED.R.EVID. 504(c). Rule 504(a)(2) defines a "psychotherapist" as:

(A) a person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, while engaged in the diagnosis or treatment of a mental or emotional condition, including drug addiction, or (B) a person licensed or certified as a psychologist under the laws of any state or nation, while similarly engaged.

PROPOSED FED.R.EVID. 504(a)(2). [The Hospital], in its capacity as a custodian of patient records, clearly fails to fall within the plain language of either prong of this definition, thereby excluding it from those authorized to claim the privilege on behalf of the patients. Moreover, while some courts have recognized the existence of a psychotherapist-patient privilege, none have allowed an institution to claim the privilege for a patient; instead, those decisions hewed close to the language of Rule 504 and considered the privilege only when invoked by psychotherapists or patients. *E.g., In re Doe,* 964 F.2d 1325 (2d Cir.1992) (patient claims privilege); *Zuniga,* 714 F.2d at 634 (psychotherapist claims on behalf of patient); *Siegfried v. City of Easton,* 146 F.R.D. 98 (E.D.Penn.1992) (patient claims privilege); *In re Grand Jury Subpoena (Psychological Treatment Records),* 710 F.Supp. 999 (D.N.J.1989) (psychotherapist claims on behalf of patient). And, while some state court have allowed hospitals to claim either the physician-patient privilege or psychologist-patient privilege on behalf of their patients, those decisions are generally based on the particular language of the statutory privilege in the state rather than a generally understood application of a common-law privilege. *E.g., Parkson v. Central DuPage Hosp.,* 105 Ill.App.3d 850, 61 Ill.Dec. 651, 653, 435 N.E.2d 140, 142 (1982); *In re the June 1979 Allegheny Cty. Invest. Grand Jury,* 490 Pa. 143, 415 A.2d 73, 76 (1980); *Division of Med. Quality v. Gherardini,* 93 Cal.App.3d 669, 156 Cal.Rptr. 55, 58–59 (1979); *Tucson Med. Center, Inc. v. Rowles,* 21 Ariz.App. 424, 520 P.2d 518, 523 (1974).

Adhering to the strictures of the Rule 504 comports nicely with the Supreme Court's admonition that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108–09, 41 L.Ed.2d 1039 (1974). Buttressing this narrow reading of the Federal psychotherapist-patient privilege is Indiana's version of the privilege. While federal law controls the existence and contours of the privilege in this federal criminal investigation, FED.R.EVID. 501, the law of privilege of the State of Indiana is somewhat relevant because "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial

cost to federal substantive and procedural policy." *Shadur,* 664 F.2d at 1061. While Indiana recognizes a psychotherapist-patient privilege, Ind.Code § 25–33–1–17 (Burns Supp.1993), it "is held by the patient or her legal representative, and may only be asserted by her or her representative." *Goodwin v. State,* 573 N.E.2d 895, 897 (Ind.Ct.App. 1991). Like the federal privilege, the Indiana version would refuse to allow an institution, and maybe even the psychotherapist, to claim the privilege on behalf of a patient. Given the plain language of Rule 504, the need to strictly construe privileges generally, and the similarity between the Indiana and federal version of the privilege, [the Hospital] simply cannot claim the privilege on behalf of patients treated by psychotherapists at the hospital merely because it is the custodian of the records. Thus, the psychotherapist-patient privilege fails to support [the Hospital's] motion for a protective order.

### III. Conclusion

The Government's motion for an order authorizing the disclosure of records of substance abuse patients at [the Hospital] will be, in an order accompanying this entry, granted in part and denied in part. [The Hospital's] Motion for a Protective Order, on the other hand, is **DENIED** in entirety.

ALL OF WHICH IS ORDERED.